ANGEL RODRIGUEZ *v.* STATE OF CONNECTICUT,
DEPARTMENT OF CORRECTION
(AC 22452)

Lavery, C. J., and Schaller and Flynn, Js.

Argued January 15—officially released May 13, 2003

*Michael J. Belzer*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellant (defendant).

*Cynthia I. Crockett*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendant, the state of Connecticut, appeals from the decision of the workers' compensation review board (board) affirming the decision of the workers' compensation commissioner (commissioner) granting the motion filed by the plaintiff, Angel Rodriguez, to open a stipulated agreement (stipulation). On appeal, the defendant claims that (1) the commissioner improperly granted the plaintiff's motion, which was filed more than four months after the parties' voluntary agreement, (2) the board improperly sustained the commissioner's decision to grant the plaintiff's motion to open, (3) the commissioner improperly failed to order the plaintiff to repay the money he received pursuant to the stipulation and (4) the commissioner improperly denied the defendant's motion to correct. We reverse the board's decision sustaining the commissioner's granting of the plaintiff's motion.[1]

---

[1] As discussed in part I, we need not determine the issue of whether the plaintiff's motion was filed timely. Furthermore, because our resolution of the defendant's second claim is dispositive, we need not discuss the third or fourth claims raised by the defendant.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. The plaintiff, during his employment with the defendant in the department of correction, incurred various injuries over a period of several years. He filed claims for those injuries. Relevant to this appeal, the plaintiff sustained, while working, injuries to his right hand in 1989 and injuries to his back in 1994. On March 31, 1999, the plaintiff and the defendant entered into the stipulation,[2] which stated that the plaintiff was represented by attorney John D. Ritson. The document was signed by the plaintiff, a representative of the defendant[3] and, acting as a witness, attorney Cynthia I. Crockett, who worked in the same law firm as Ritson.

The commissioner approved the stipulation on April 1, 1999.[4] The plaintiff accepted a payment of $4250 as

---

[2] "A stipulation is a compromise and release type of settlement similar to settlements in civil personal injury cases where a claim is settled with a lump sum payment accompanied by a release of the adverse party from further liability. J. Asselin, Connecticut Workers' Compensation Practice Manual (1985) pp. 207–208. Although the [Workers' Compensation Act, General Statutes § 31-275 et seq.] does not explicitly provide for this type of settlement, we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation. . . . There are three types of stipulations: (1) a full and final stipulation that closes *all* aspects of the claim whether they are for past, present or future wages and medical expenses, known and unknown; (2) a stipulation to date that is used to close out only a portion of a claim with the remainder left open or that is used to close out an entire claim but only up to a certain date; and (3) an open medical stipulation that closes all aspects of the claim except for medical expenses that are related to the accident or the disease. A. Sevarino, Connecticut Workers' Compensation After Reforms (1994) p. 233." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 479–80, 650 A.2d 1240 (1994).

[3] Laurie Ann Foster, a claims representative, represented the defendant.

[4] We note that "[a]pproval of . . . a stipulation by the commissioner is not an automatic process. It is his function and duty to examine all the facts with care before entering an award, and this is particularly true when the stipulation presented provides for a complete release of all claims under the [Workers' Compensation Act, General Statutes § 31-275 et seq.]." (Internal quotation marks omitted.) *O'Neil* v. *Honeywell, Inc.*, 66 Conn. App. 332, 337, 784 A.2d 428 (2001), cert. denied, 259 Conn. 914, 792 A.2d 852 (2002).

full and final settlement of all claims of injury sustained during his employment. The stipulation specifically included the 1989 injury to the plaintiff's right hand and the 1994 injury to his back.

On October 4, 1999, the plaintiff filed a motion to open the stipulation.[5] The motion stated that subsequent to the execution of the stipulation, counsel for the plaintiff became aware of the pending and active claim from 1989 regarding the injury to the plaintiff's right hand. The motion also argued that a different attorney, Ronald L. LePine, represented the plaintiff in the 1989 claim and that at the time the stipulation was executed, the plaintiff did not inform his present counsel[6] that LePine represented him in that matter. As a result, the motion stated that the plaintiff's current counsel was without authority to enter into a stipulation for the 1989 claim.

The commissioner[7] conducted a two day evidentiary hearing on the plaintiff's motion. The defendant argued that General Statutes § 52-212a[8] barred the commissioner from opening the stipulation because the motion was filed more than four months after the stipulation was approved. The commissioner concluded, on the basis of the text of the statute, that § 52-212a applied only to judgments or decrees of the Superior Court and,

---

[5] The parties, the commissioner and the board improperly used the term "motion to reopen." We note that because the decision had never been opened, the appropriate term is a motion to open. See *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 537 n.1, 612 A.2d 1222 (1992); *National Iron Bank* v. *Gelormino*, 28 Conn. App. 7, 8 n.1, 609 A.2d 666 (1992).

[6] The law firm of Hersh and Ritson represented the plaintiff in his 1994 claim, in the proceedings involving the motion to open and in the present appeal.

[7] We note that the commissioner who decided the motion to open was not the same commissioner who approved the stipulation.

[8] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

therefore, that the statute did not apply to workers' compensation awards or agreements.

The commissioner concluded that General Statutes § 31-315[9] applied to the present case. The commissioner then opened and set aside the stipulation as a result of the mistake made by the plaintiff and Crockett, who thought they were settling only the 1994 claim. The defendant filed a motion to correct, which was denied, and subsequently appealed to the board from the commissioner's decision.

The board noted that the sole ground on which the commissioner had based his decision to grant the plaintiff's motion was the "power to modify an award in the same manner that a state court has the authority to open and modify one of its judgments in instances of fraud, misrepresentation, accident and mutual mistake of fact, though not in instances of a mistaken construction of law." The board stated that the commissioner's decision was premised on the theory of mistake; however, the mistake was based solely on the perspective of the plaintiff. The drafter of the stipulation, Laurie Ann

[9] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter or any transfer of liability for a claim to the Second Injury Fund under the provisions of section 31-349 shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party or, in the case of a transfer under section 31-349, upon request of the custodian of the Second Injury Fund, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

Foster, had represented the defendant in the settlement proceedings. She testified that department regulations required that she include all injuries when drafting the stipulation. The board, therefore, concluded that it was improper for the commissioner to open the stipulation on the basis of a theory of mutual mistake.[10]

Despite recognizing the error of the commissioner,[11] the board stated that the stipulation was invalid because LePine represented the plaintiff in the unresolved 1989 claim and had not been involved in or notified of the stipulation. The board concluded that as a result of LePine's absence, the plaintiff never validly consented to the stipulation. The board therefore affirmed the decision of the commissioner, and this appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the commissioner improperly granted the plaintiff's motion to open because it was filed more than four months after the commissioner approved the stipulation. Specifically, the defendant argues that the commissioner's authority, pursuant to § 31-315, to open a workers' compensation award or voluntary agreement is limited by the four month limitation contained in § 52-212a. Under the facts and circumstances presented, we hold that it is unnecessary to determine that issue.

At the outset, we note that the defendant's claim raises an issue of statutory interpretation, which "involves a question of law and, thus, our review is

---

[10] The board also noted that in some cases, stipulations have been opened where the lack of capacity of the claimant was shown. In the present case, however, the plaintiff did not testify at the hearing; therefore, it was impossible to determine his level of knowledge and understanding of the terms of the stipulation.

[11] The board stated that "[i]f our analysis of the instant case were to stop at this point, we would be obliged to reverse the decision of the trial commissioner."

plenary." *Poirier* v. *Zoning Board of Appeals*, 75 Conn. App. 289, 294, 815 A.2d 716, cert. denied, 263 Conn. 912, 821 A.2d 766 (2003).

Section 31-315, unlike § 52-212a, does not contain any explicit time limitation to open a workers' compensation award or agreement. The plaintiff's motion was based on the theory of mutual mistake. Our Supreme Court has stated that "[c]*ourts have intrinsic powers, independent of statutory provisions authorizing the opening of judgments,* to vacate any judgment obtained by fraud, duress or *mutual mistake.*" (Emphasis added.) *In re Baby Girl B.*, 224 Conn. 263, 283, 618 A.2d 1 (1992); see also *Wilkes* v. *Wilkes*, 55 Conn. App. 313, 325, 738 A.2d 758 (1999).

Additionally, the board's decision affirmed the granting of the motion to open on the ground of the absence of consent to the stipulation. "It is a well-established general rule that even a judgment rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened [after the four month limitation] . . . if it is shown that the stipulation, and hence the judgment, was obtained by fraud, *in the actual absence of consent,* or because of mutual mistake." (Emphasis in original; internal quotation marks omitted.) *Connecticut National Bank* v. *Cooper*, 232 Conn. 405, 413–14, 656 A.2d 215 (1995). As we previously have stated, § 31-315 grants the commission the same authority as any court to open and to modify a judgment. It is unnecessary to engage in further statutory analysis. We simply note that the defendant's argument is misplaced. If we determined that the plaintiff's motion to open was granted properly under the theory of either mutual mistake or lack of consent to the stipulation, that would remove the time restriction set forth in § 52-212a, even if we were to determine that § 52-212a was applicable to a motion to open brought pursuant to § 31-315. As a result of our conclusion, however, that

it was improper to grant the motion to open under either theory, we need not reach the issue of whether the motion was timely. It is, therefore, unnecessary to determine whether the plaintiff's motion to open, pursuant to § 31-315 was subject to the four month time period set forth in § 52-212a.

## II

The defendant next claims that the board improperly sustained the commissioner's decision to grant the plaintiff's motion to open the stipulation. Specifically, the defendant argues that the board improperly determined that the stipulation was not valid because of the failure to include or to notify LePine of the stipulation. We agree.

As an initial matter, we set forth the applicable legal principles and standard of review that guide our resolution of the defendant's appeal. "The board sits as an appellate tribunal reviewing the decision of the commissioner." *Paternostro* v. *Arborio Corp.*, 56 Conn. App. 215, 218, 742 A.2d 409 (1999), cert. denied, 252 Conn. 928, 746 A.2d 788 (2000). "The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's findings and award. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However,] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include

material facts which are admitted or undisputed."
(Internal quotation marks omitted.) *Mahoney* v. *Bill
Mann Tree Service, Inc.*, 67 Conn. App. 134, 136, 787
A.2d 61 (2001).

"Our Supreme Court has stated that [a]lthough the
commission may modify awards under certain circum-
stances, its power to do so is strictly limited by statute.
. . . Section 31-315 allows the commission to modify
an award in three situations. First, modification is per-
mitted where the incapacity of an injured employee has
increased, decreased or ceased, or . . . the measure
of dependence on account of which the compensation
is paid has changed . . . . The plaintiff has not alleged
that either of these contingencies has occurred. Second,
the award may be modified when changed conditions
of fact have arisen which necessitate a change of [the
award]. The plaintiff has pointed to no change of fact
necessitating a change in the original award. Third, [t]he
commissioner shall also have the same power to open
and modify an award as any court of the state has to
open and modify a judgment of such court. This provi-
sion extends the commission's power to open and mod-
ify judgments to cases of accident . . . to mistakes of
fact . . . and to fraud . . . but not to mistakes of law.
. . . This provision, however, does not independently
confer authority to modify awards for reasons not other-
wise enumerated in § 31-315." (Citation omitted; inter-
nal quotation marks omitted.) *Bergin* v. *Dept. of
Correction*, 75 Conn. App. 591, 598, 817 A.2d 136 (2003).

We note that "[a] judgment rendered in accordance
with the stipulation of the parties is to be construed
and regarded as a binding contract." (Internal quotation
marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71
Conn. App. 321, 328, 801 A.2d 902, cert. denied, 261
Conn. 933, 806 A.2d 1070 (2002). Our Supreme Court
has stated that "[i]t is well settled that the existence of
a contract is a question of fact." *Burse* v. *American*

*International Airways, Inc.,* 262 Conn. 31, 42, 808 A.2d 672 (2002). Nevertheless, "[a]lthough we generally defer to the commissioner on questions of fact, we do not do so if there is no reasonable basis for [the] decision." Id. With the foregoing principles in mind, we turn to the defendant's claim.

The board acknowledged that LePine had not been provided with notice of the stipulation, nor was he present at the time the plaintiff and the defendant entered into the stipulation. The board stated that the plaintiff's current counsel was without authority to settle the 1989 claim. It also stated that as a result of LePine's absence, the plaintiff was, in effect, unrepresented for the 1989 claim. The board, therefore, concluded that LePine's absence caused the stipulation to be invalid due to the lack of valid consent.

The board's discussion regarding the absence of LePine at the time the stipulation was entered into fails to account for the fact that the plaintiff himself signed the stipulation. A member of the law firm that represented him in the 1994 claim acted as a witness. The stipulation clearly and plainly indicated that it encompassed all of the plaintiff's claims, including those from 1994 and 1989. The commissioner, prior to accepting the stipulation, canvassed the plaintiff to ensure that he understood the document he signed.

Our Supreme Court has stated that "[a]n attorney who is authorized to represent a client in litigation does not automatically have either implied or apparent authority to settle or otherwise to compromise the client's cause of action." *Acheson* v. *White,* 195 Conn. 211, 213 n.4, 487 A.2d 197 (1985); *Cole* v. *Myers,* 128 Conn. 223, 227, 21 A.2d 396 (1941). In the present case, however, it is not the attorney who settled the claim without the knowledge of the client, but the opposite. The authority to settle a claim rests with the client, in this

case, the plaintiff. See rule 1.2 (a) of the Rules of Professional Conduct ("lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter"); 1 Restatement (Third), Law Governing Lawyers § 22, p. 180 (2000). The plaintiff possessed the ability to enter into the stipulation and to settle his various claims, and the absence of LePine does not invalidate the stipulation. We conclude that the board's determination that the stipulation was made without the plaintiff's valid consent and that the stipulation was invalid was made without a reasonable basis and, therefore, was improper.

## III

Finally, we address the plaintiff's argument[12] that the commissioner properly granted the motion to open on the basis of mutual mistake. Specifically, the plaintiff claims that a strong factual basis existed for the commissioner to find that there had been a mutual mistake. We disagree with the plaintiff and conclude that the board properly determined that the commissioner improperly found that there had been a mutual mistake.

"The kind of mistake that would justify the opening of a stipulated judgment . . . must be mutual; a unilateral mistake will not be sufficient to open the judgment." *Magowan* v. *Magowan*, 73 Conn. App. 733, 741, 812 A.2d 30, cert. denied, 262 Conn. 934, 815 A.2d 134 (2003); *Solomon* v. *Keiser*, 22 Conn. App. 424, 427, 577 A.2d 1103 (1990). This court has defined a mutual mistake as "one that is common to both parties and effects a result that neither intended. . . . Whether there has been such mistake is a question of fact." (Citation omit-

[12] The plaintiff did not file a preliminary statement of issues, a cross appeal or alternate grounds on which the judgment should be affirmed pursuant to Practice Book § 63-4. Nevertheless, we will address the issue. Both parties briefed the issue and, therefore, the defendant is not prejudiced. See *Raph* v. *Vogeler*, 45 Conn. App. 56, 58 n.1, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997).

ted; internal quotation marks omitted.) *Regis* v. *Connecticut Real Estate Investors Balanced Fund, Inc.*, 28 Conn. App. 760, 765, 613 A.2d 321, cert. denied, 224 Conn. 907, 615 A.2d 1048 (1992); see also *Dainty Rubbish Service, Inc.* v. *Beacon Hill Assn., Inc.*, 32 Conn. App. 530, 537, 630 A.2d 115 (1993) ("mutual mistake exists where both parties are mutually mistaken about the same material fact").

In the present case, the defendant's representative, Foster, testified that she drafted the stipulation. She stated that it was the defendant's policy to settle all the claims of a particular individual. She further testified that people who attend hearings involving such matters are made aware of that policy. In the document she prepared for the hearing representative, she noted that the proposed stipulation covered all of the plaintiff's claims. Finally, the stipulation drafted by Foster clearly indicated that it included all of the plaintiff's claims. Specifically, the stipulation stated: "It is the [plaintiff's] contention that on or about . . . 9/19/89 . . . 8/5/94 . . . he sustained injuries . . . . [I]t is agreed by and between the parties hereto that the [defendant] shall pay to the [plaintiff] the sum of [$4250], the same to be *in full and final settlement of all claims which the aforesaid [plaintiff] might otherwise have against the [defendant]* and is made and accepted in lieu of all other compensation payments . . . . Payment of the aforesaid sum . . . *shall be accepted as a full and final settlement of compensation for said injuries*, and any other injuries the [plaintiff] may have sustained while in the employ of the State of Connecticut . . . ." (Emphasis added.)

The language in the stipulation clearly demonstrated the intent, on the part of the defendant, to settle all of the claims by the plaintiff. The date of the 1989 claim is included, as well as the use of the plural "injuries" and "claims." The defendant intended the stipulation

to include more than only the 1994 claim; it encapsulated all of the plaintiff's claims.

The board noted that the commissioner, in granting the plaintiff's motion, focused solely on the mistake stemming from the plaintiff's perspective. It also stated that such a unilateral mistake could not support a finding of a mutual mistake. We agree with the board. Moreover, our review of the record does not reveal any mutual or common mistake regarding the stipulation. There is nothing to indicate that the terms of the stipulation were not precisely what the defendant sought to obtain. We also note that prior to accepting the agreement, the commissioner canvassed the plaintiff, and was satisfied that he had read and understood the stipulation.[13] We conclude, therefore, that the board properly decided that there was no evidence in the record to support the commissioner's finding that there had been a mutual mistake.

The decision of the workers' compensation review board is reversed and the case is remanded to the board with direction to remand the case to the commissioner with direction to deny the plaintiff's motion to open.

In this opinion the other judges concurred.

---

[13] The plaintiff did not testify at the evidentiary hearing regarding the motion to open. The stipulation contained the following paragraph: "It is further stipulated and agreed that, before the [plaintiff] signed this stipulation, he read it or the same was read and interpreted to him in language that he understands, and he knows that it is a full and final settlement and that it is intended to deal with any and all conditions, known or unknown, which exist as of the date hereof, or any changes of conditions which may arise in the future on account of said alleged injuries whether said changes of condition are foreseen or unforeseen."