BRIDGET RAGIN *v.* DOUGLAS LEE
(AC 21809)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 18—officially released August 19, 2003

*Sean K. Crowshaw*, for the appellant (minor child).

*Ronald Blanchette*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *Donald M. Longley*, assistant attorney general, for the appellee (state).

*Leonard I. Shankman*, guardian ad litem for the minor child.

*Opinion*

LAVERY, C. J. This appeal concerns the finality of an appeal from a decision of a family support magistrate and the standing of a child to file a motion to open a paternity judgment. On June 24, 1999, the commissioner of social services (commissioner) filed the underlying paternity action on behalf of the state, pursuant to General Statutes § 46b-162, seeking support for T, a minor child of Bridget Ragin.[1] The child was born out of wedlock. The commissioner brought this action because the mother and child receive state assistance. Service of the paternity action on the putative father, the defendant, Douglas Lee, was made by leaving the paternity petition, summons and order for hearing at the residence of the defendant's mother on June 19, 1999. The defendant did not appear at a hearing on August 17, 1999, but Family Support Magistrate Harris T. Lifshitz appointed an attorney as guardian ad litem and counsel for the minor child at that hearing and continued the matter to October 12, 1999. On October 12, 1999, the defendant did not appear. Magistrate Lifshitz found that there was valid abode service on the defendant and rendered a default judgment of paternity.

---

[1] General Statutes § 46b-162 provides: "The state or any town interested in the support of a child born out of wedlock may, if the mother neglects to bring such petition, institute such proceedings against the person accused of begetting the child, and may take up and pursue any petition commenced by the mother for the maintenance of the child, if she fails to prosecute to final judgment. Such petition may be made by the Commissioner of Social Services or the town welfare administrator on information or belief. The mother of the child may be subpoenaed for testimony on the hearing of the petition."

At a hearing on November 30, 1999, the defendant appeared. He denied that he is the child's father and orally requested genetic testing to determine paternity. He also indicated that he did not live at his mother's residence. On November 30, 1999, counsel was appointed to represent the defendant, but counsel did not become aware of the appointment until June, 2000. Although counsel was appointed, the defendant has been essentially unrepresented during the underlying proceedings.

On December 10, 1999, within two months of the entry of the default judgment, counsel for the minor child as attorney and guardian ad litem, filed a motion to open the default judgment of paternity. The motion alleged that the defendant had not received actual notice of the paternity proceedings, that he was incarcerated on October 12, 1999, and that the judgment should be opened, in the best interest of the child, to eliminate any doubt as to the child's paternity.[2] Counsel also filed a motion for genetic testing, pursuant to General Statutes § 46b-168, arguing that it is in the best interest of the minor child to eliminate any doubt as to the child's paternity while the child is still very young and to minimize the possibility of any future dispute regarding the parentage of the child.[3]

___

[2] The parties, the family support magistrate and the Superior Court improperly used the designation "motion to reopen." We note that because the decision had not been previously opened, the appropriate term is "motion to open," and we use that designation throughout this opinion. See *Rodriguez* v. *State*, 76 Conn. App. 614, 617 n.5, 820 A.2d 1097 (2003); *Tutsky* v. *YMCA of Greenwich*, 28 Conn. App. 536, 537 n.1, 612 A.2d 1222 (1992).

[3] General Statutes § 46b-168 (a) provides: "In any proceeding in which the question of paternity is at issue the court or a family support magistrate, on motion of any party, may order genetic tests which shall mean deoxyribonucleic acid tests, to be performed by a hospital, accredited laboratory, qualified physician or other qualified person designated by the court, to determine whether or not the putative father or husband is the father of the child. The results of such tests, whether ordered under this section or required by the IV-D agency under section 46b-168a, shall be admissible in evidence to either establish definite exclusion of the putative father or husband or as evidence that he is the father of the child without the need

The state objected to the motions, arguing that there was no final judgment from which to file a motion to open and that the child's counsel had no standing to raise the claim that there was insufficient service of process on the defendant. The state also contended that the child's counsel was present at the October 12, 1999 hearing and waived the claim by failing to object to the entry of the default. The state further argued that a claim regarding lack of notice must be raised by way of a timely motion to dismiss, which had not been filed.

On February 17, 2000, a hearing was held on the child's motion to open before Family Support Magistrate Christine Burt. Testimony by an identification records specialist from the state indicated that the defendant had been incarcerated since October 13, 1999, but there was no indication that he was incarcerated on October 12, 1999. At the hearing, there also was some discussion regarding the appointment of counsel for the defendant. Magistrate Burt found that the defendant had had a right to counsel in the paternity matter, but that at the time the request for counsel was made, the paternity determination already had been made. The magistrate assumed that the defendant was

for foundation testimony or other proof of authenticity or accuracy, unless objection is made in writing not later than twenty days prior to the hearing at which such results may be introduced in evidence."

General Statutes § 46b-168a (a) provides: "In any IV-D support case, as defined in subdivision (13) of subsection (b) of section 46b-231, in which the paternity of a child is at issue, the IV-D agency shall require the child and all other parties other than individuals who have good cause for refusing to cooperate or who are subject to other exceptions to submit to genetic tests which shall mean deoxyribonucleic acid tests, to be performed by a hospital, accredited laboratory, qualified physician or other qualified person designated by such agency, to determine whether or not the putative father or husband is the father of the child, upon the request of any such party, provided such request is supported by a sworn statement by the party which either (1) alleges paternity and sets forth facts establishing a reasonable possibility of the requisite sexual contact between the parties, or (2) denies paternity and sets forth facts establishing a reasonable possibility of the nonexistence of sexual contact between the parties."

proceeding pro se at the hearing. Although the state requested that the appointment of counsel be vacated, Magistrate Burt did not specifically do so.

The child's counsel filed a request to revise the motion to open on April 19, 2000. The revised motion alleged that the defendant had not had actual notice of the hearing, and that it was in the child's best interest that the judgment be opened and genetic tests performed.

On June 13, 2000, a hearing was held before Magistrate Lifshitz on the revised motion to open. Magistrate Lifshitz took the position that the appointment of counsel for the defendant had not been vacated in the prior proceeding and that the appointment was still pending. The magistrate also indicated that he would consider the merits of the state's argument that the child's counsel lacked standing to file a motion to open before considering the merits of the motion to open. Counsel were ordered to file briefs on or before June 30, 2000. A review of the transcript of the hearing indicates that Magistrate Lifshitz did not make any decision on the child's standing or on the merits of the motion to open on the date of the hearing.[4]

---

[4] Magistrate Lifshitz subsequently articulated that he did not make any decision on June 13, 2000, and cited to the transcript for support. The state requests that this court disregard and strike the magistrate's articulation because it contends that it was improper.

Although the state objected to the motion for articulation directed to the family support magistrate, it failed to file a motion for review of the magistrate's decision on the motion for articulation. Pursuant to Practice Book § 66-5, the sole remedy of any party desiring the court having appellate jurisdiction to review a decision on a motion for rectification or articulation shall be by motion for review under Practice Book § 66-7. The state failed to file a motion for review, and we decline to consider the state's request to strike the magistrate's articulation under those circumstances. Furthermore, we note that even without Magistrate Lifshitz' articulation there is a sufficient record to consider the appeal on the basis of the transcript of June 13, 2000.

On June 21, 2000, pursuant to General Statutes § 46b-231 (n), the state appealed to the Superior Court, challenging Magistrate Lifshitz' authority to continue the appointment of counsel for the father and to consider the merits of the child's motion to open.[5] Counsel for the minor child filed in the Superior Court a motion to dismiss the appeal, arguing that there was no appealable final judgment because Magistrate Lifshitz had not yet decided any issue, including whether the child had standing to file the motion to open.

The court did not specifically rule on the motion to dismiss filed by the child.[6] The court ordered: "The decision[s] of the family support magistrate on June 13, 2000, as set forth in the appeal petition [filed by the state], are reversed." Counsel for the child, with the consent of the. child's appointed guardian ad litem, appealed to this court from the Superior Court's decision.[7] The child contends that Magistrate Lifshitz did

---

[5] General Statutes § 46b-231 (n) (1) provides: "A person who is aggrieved by a final decision of a family support magistrate is entitled to judicial review by way of appeal under this section."

[6] In an articulation, the court indicated that it found that the state had filed its appeal from a final judgment in that Magistrate Lifshitz allowed counsel for the defendant when the court found that there was no authority to appoint counsel and no subject matter jurisdiction to consider a motion to open based on insufficient service of process. The court further stated that it found that those were final decisions as set forth in General Statutes § 46b-231 (n).

[7] A child may bring an appeal through its court-appointed counsel and guardian ad litem. See Newman v. Newman, 235 Conn. 82, 95, 663 A.2d 980 (1995). A child shall be made a party to a paternity action under the provisions of General Statutes § 46b-172a (c) when the putative father requests an adjudication of paternity. The legislative history for § 46b-172a shows that there is legislative intent for the child to be a party to paternity proceedings.

Representative Richard D. Tulisano stated in the House of Representatives that the bill that became § 46b-172a was in response to changes in the law. "Last year we passed legislation which gave children born out of wedlock rights of inheritance. There is a movement in the law generally in the United States and in the Supreme Court, recognizing more and more the interests of a child that was born out of wedlock. This would give additional interest to that child and protection to him as well as protection to the rights of the father who may want to exert that concern which is beginning to be shown

not render an appealable decision under the provisions of § 46b-231 (n) and that the state's appeal to the Superior Court was premature. We agree.

As a threshold matter, we set forth our standard of review. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Doe* v. *Roe*, 246 Conn. 652, 660, 717 A.2d 706 (1998); *ABB Automation, Inc.* v. *Zaharna*, 77 Conn. App. 260, 263, 823 A.2d 340 (2003).

Turning to the merits of the child's appeal, we find that Magistrate Lifshitz did not render any decision on the merits of the child's motion to open, left the matter open for the filing of briefs by the parties and indicated that he would consider the state's claim that the child lacked standing to file the motion prior to considering the merits of the motion to open. Magistrate Lifshitz made a determination that Magistrate Burt had not

in our modern-day society. There have been a number of cases in Connecticut raised by habeas corpus in which those rights are being exerted. That should not be necessary. There should be a procedure available to everybody with the best interests of the child always in view." 22 H.R. Proc., Pt. 23, 1979 Sess., pp. 8117–18, remarks of Representative Richard D. Tulisano.

We see no reason why the child who is the subject of a paternity action brought by the state under the provisions of General Statutes § 46b-162 or by the mother under General Statutes § 46b-160 should not also be afforded party status. As this court stated in *Demarest* v. *Fire Dept. of Norwalk*, 76 Conn. App. 24, 817 A.2d 1285 (2003): "Parties are considered indispensable when they not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final [disposition] may be . . . inconsistent with equity and good conscience. . . . Indispensable parties must be joined because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]." (Internal quotation marks omitted.) Id., 28. We conclude that a minor child, who is the subject of a paternity action, is an indispensable party to that action.

vacated the appointment of counsel for the defendant, but had indicated that it was unclear whether counsel would be paid for his services.

General Statutes § 46b-231 (n) (1) permits an appeal to the Superior Court by "[a] person who is aggrieved by a final decision of a family support magistrate . . . ." In *Harvey* v. *Wilcox*, 67 Conn. App. 1, 5, 786 A.2d 533 (2001), we noted that to determine whether a seemingly interlocutory order of a family support magistrate is nonetheless final for purposes of appeal to the Superior Court, this court applies the finality test of *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983); see also *Cardona* v. *Negron*, 53 Conn. App. 152, 155–56 n.10, 728 A.2d 1150 (1999). Under *Curcio*, an otherwise interlocutory order is immediately appealable when it (1) terminates a separate and distinct proceeding or (2) so concludes the rights of the parties that further proceedings cannot affect them. *State* v. *Curcio*, supra, 31.

In its petition to appeal to the Superior Court, the state alleged that Magistrate Lifshitz improperly had refused to find that the defendant was not entitled to court-appointed counsel and also improperly decided to hear the child's motion to open the paternity judgment based on insufficient service on the defendant.

The state argues that it need not await Magistrate Lifshitz' final decision on the child's motion to open before appealing to the Superior Court. It claims that the magistrate's decision to consider the merits of the child's motion to open is immediately appealable under the second prong of the *Curcio* test because it would not have a further opportunity to raise its position that the claim of insufficient service of process had been waived.

"The second test for finality . . . focuses not on the proceedings involved, but on the potential harm to the appellant's rights. [An interlocutory order] will be

deemed final for purposes of appeal only if it involves a claimed right the legal and practical value of which would be destroyed if it were not vindicated before trial . . . . The second prong of *Curcio* requires, therefore, the [appellants] to prove that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [appellants] irreparably harmed unless they may immediately appeal." (Internal quotation marks omitted.) *Ruslici* v. *Malloy*, 60 Conn. App. 47, 54–55, 758 A.2d 424, cert. denied, 254 Conn. 952, 762 A.2d 903 (2000).

The state's argument is factually inaccurate because subsequent review of the waiver issue has not been foreclosed. The family support magistrate made no findings on June 13, 2000, regarding the merits of the motion to open and made no ruling regarding the viability of the state's argument that the notice issue had been waived. Furthermore, the state cannot show any presently existing right that would be destroyed if it was not vindicated prior to the magistrate's consideration of the standing issue raised by the state and the merits of the child's motion to open.

We conclude that the state's appeal to the court was premature because the family support magistrate's actions on June 13, 2000, did not terminate a separate and distinct proceeding, nor did they so conclude the rights of the parties that further proceedings cannot affect them. There is no appealable final judgment in this case under the second prong of the *Curcio* test.

The state also argues that its appeal to the court is permitted under the exception to the final judgment rule that permits appeals when the appellant raises a colorable claim that the trial court, or as here the family support magistrate, lacks subject matter jurisdiction. See *Solomon* v. *Keiser*, 212 Conn. 741, 747, 562 A.2d

524 (1989); *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 418, 426 A.2d 1324 (1980).

In *Cardona* v. *Negron,* supra, 53 Conn. App. 157, we concluded that a magistrate lacked authority to order genetic testing prior to taking any action on a motion to open a paternity judgment filed nearly five years after the judgment was rendered. The state contends that the family support magistrate in this case similarly had no authority to consider the child's claim regarding the insufficient service of process on the defendant because the claim had been waived and the child lacks standing.

The court in its articulation indicated that Magistrate Lifshitz did not have any authority to continue the appointment of counsel for the defaulted father because he was no longer a putative father and that the magistrate had no authority to open the default judgment based on the question of whether the defendant had notice of the proceedings because the child lacked standing to raise the issue. The court also stated that because sufficiency of service of process is tested by way of filing a motion to dismiss and no motion to dismiss was ever filed in this case, the magistrate had no subject matter jurisdiction to hear a motion to open based on insufficiency of service of process. The state relies on the articulation to rebut the child's claim that the state's appeal to the Superior Court was premature. We disagree.

As to the appointment of counsel for the defendant, our Supreme Court held in *Lavertue* v. *Niman,* 196 Conn. 403, 412, 493 A.2d 213 (1985), that an indigent defendant in a state supported paternity action has a constitutional right to court-appointed counsel at state expense. In the present case, the defendant was found to be indigent and the underlying action was a state supported paternity action. There is no indication in

the trial court file that the defendant waived the right to counsel under the provisions of Practice Book § 25-64. The factual issue pending before the family support magistrate was whether the father had waived his right to counsel when he was defaulted for failure to appear and there is a pending motion to open the default judgment of paternity based on lack of actual notice to the defendant. The magistrate has not yet determined the factual basis for the lack of notice claim, and the issue is still pending before the magistrate. Under those circumstances, paternity is still at issue in a state supported paternity proceeding, and we conclude that the magistrate had the authority to find that the appointment of counsel for the defendant was still viable.

The court also held that Magistrate Lifshitz had no authority to consider the merits of the child's motion to open the paternity judgment based on insufficient service of process. The court held that the guardian ad litem and counsel for the minor child did not have standing to raise that claim.

"The issue of standing implicates the court's subject matter jurisdiction. . . . Standing focuses on the party seeking to be heard and not on the issues that party wants to have heard." (Citation omitted; internal quotation marks omitted.) *Taff* v. *Bettcher*, 35 Conn. App. 421, 424–25, 646 A.2d 875 (1994). In *Water Pollution Control Authority* v. *OTP Realty, LLC*, 76 Conn. App. 711, 822 A.2d 257, cert. denied, 264 Conn. 920, 828 A.2d 619 (2003), this court stated: "Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he has, in an individual or representative capacity, some real interest in the . . . subject matter of the controversy." (Internal quotation marks omitted.) Id., 713; see also *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002).

The question of standing, therefore, implicates the ability of the court to hear a matter. Standing "is a

practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate non-justiciable interests and that judicial decisions which may affect the rights of others are forged in hot controversy . . . ." (Internal quotation marks omitted.) Id. If the child lacked standing, which is a jurisdictional issue, the magistrate lacked authority to decide the merits of the child's motion to open.

The court held that the child lacked standing to raise the claim of insufficiency of service of process on the defendant because no motion to dismiss raising the notice claim had been filed. In *Connor* v. *Statewide Grievance Committee*, 260 Conn. 435, 445, 797 A.2d 1081 (2002), our Supreme Court held: "It is fundamental that jurisdiction over a person can be obtained by waiver. *United States Trust Co.* v. *Bohart*, 197 Conn. 34, 39, 495 A.2d 1034 (1985) ('[u]nlike subject matter jurisdiction . . . personal jurisdiction may be created through consent or waiver'). Although the filing of an appearance on behalf of a party, in and of itself, does not waive that party's personal jurisdiction claims, '[a]ny defendant, wishing to contest the court's jurisdiction, may do so even after having entered a general appearance, but must do so by filing a motion to dismiss within thirty days of the filing of an appearance.' Practice Book § 10-30; see *Pitchell* v. *Hartford*, 247 Conn. 422, 433, 722 A.2d 797 (1999) ('rule specifically and unambiguously provides that any claim of lack of jurisdiction over the person as a result of an insufficiency of service of process is waived unless it is raised by a motion to dismiss filed within thirty days in the sequence required by Practice Book § 10-6')." In the present case, the magistrate had yet to make any factual determination regarding whether the defendant waived the claim of insufficiency of service of process and whether the child could raise that claim by way of filing a motion to open.

We note that the state and the Superior Court have focused exclusively on the lack of notice to the defendant as the basis for the child's motion to open the default judgment of paternity. The motion to open filed by counsel for the minor child also includes, however, a claim that it is in the best interest of the minor child that the judgment be opened so that genetic testing may be performed to eliminate any doubt as to the child's paternity and to eliminate the possibility of any future dispute regarding the parentage of the child. The question of the child's interest in an accurate determination of paternity and the child's standing to request that a default judgment of paternity be opened based on that interest also remains pending before the family support magistrate.

The United States Supreme Court has recognized that "both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination." *Little* v. *Streater*, 452 U.S. 1, 13, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981). Connecticut has long recognized that children have a separate and independent interest in family relations matters. See *In re Bruce R.*, 234 Conn. 194, 209–10, 662 A.2d 107 (1995); *Guille* v. *Guille*, 196 Conn. 260, 263–64, 492 A.2d 175 (1985); *Salvio* v. *Salvio*, 186 Conn. 311, 441 A.2d 190 (1982); *Yontef* v. *Yontef*, 185 Conn. 275, 440 A.2d 899 (1981). Our Supreme Court has recognized that both the father and the child in a paternity proceeding have an interest in seeing that their rights to companionship, care and custody are accurately adjudicated. See *Lavertue* v. *Niman*, supra, 196 Conn. 408–409. The court in *Lavertue* v. *Niman*, supra, 408–409, noted that the child's interests also extend to its health, which may depend on an accurate family medical history. The court stated: "The child's interests in this regard are particularly strong. 'Any determination that a particular individual is a child's biological father may have profound

sociological and psychological ramifications. . . . It is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to have some assurance that the correct person has been so identified.' . . . *Salas* v. *Cortez*, 24 Cal. 3d 22, 33–34, 593 P.2d 226, 154 Cal. Rptr. 529, cert. denied, 444 U.S. 900, 100 S. Ct. 209, 62 L. Ed. 2d 136 (1979)." *Lavertue* v. *Niman*, supra, 409. In his concurrence in *Palumbo* v. *Gray*, 208 Conn. 21, 543 A.2d 1331 (1988), Associate Justice David M. Shea stated that the issue of paternity is of paramount importance to the child and that the court should exercise its authority to require genetic marker tests where the parties neglect to provide them. Id., 37 (*Shea, J.,* concurring). In its report on the Social Services Amendments of 1974, Pub. L. No. 93-647, 88 Stat. 2337, which amended the Social Security Act, 42 U.S.C. § 654 et seq., the finance committee of the United States Senate stated: "In taking the position that a child born out of wedlock has a right to have its paternity ascertained in a fair and efficient manner, the committee acknowledges that legislation must recognize the interest primarily at stake in the paternity action to be that of the child. . . . The Committee is convinced that . . . paternity can be ascertained with reasonable assurance, particularly through the use of scientifically conducted blood typing." S. Rep. No. 93-1356, 93rd Cong., 2d Sess., 1974 U.S. Code Cong. & Admin. News 8155.

Courts in other jurisdictions have found that a child has a right to pursue paternity and support issues, and to accuracy in a paternity determination. See *Spada* v. *Pauley*, 149 Mich. App. 196, 385 N.W.2d 746 (1986), cert. denied, 425 Mich. 1203, 389 N.W.2d 85 (1986); *Johnson* v. *Norman*, 66 Ohio St. 2d 186, 421 N.E.2d 124 (1981); *State ex rel. McMichael* v. *Fox*, 132 Wash. 2d 346, 352–53, 937 P.2d 1075 (1997) (en banc).

We hold that a child who is the subject of a paternity action has a fundamental interest in an accurate determination of paternity that is independent of the state's interest in establishing paternity for the benefit of obtaining payment for the child's care and any interest that the parents may have in the child. We note that in the present case, the motion to open filed by counsel for the minor child and the guardian ad litem for the minor child alleged that it was in the best interest of the child that there be a definitive determination of the child's paternity by genetic testing, and we remand the matter for consideration of that claim.

In *Hartford* v. *Pan Pacific Development (Connecticut), Inc.*, 61 Conn. App. 481, 764 A.2d 1273, cert. denied, 256 Conn. 913, 772 A.2d 1126 (2001), we stated: "Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. 1 Restatement (Second), Judgments § 11 [(1982)]. A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. *Monroe* v. *Monroe*, 177 Conn. 173, 185, 413 A.2d 819, appeal dismissed, 444 U.S. 801, 100 S. Ct. 20, 62 L. Ed. 2d 14 (1979). Once it is determined that a tribunal has authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. *Craig* v. *Bronson*, 202 Conn. 93, 101, 520 A.2d 155 (1987)." (Internal quotation marks omitted.) *Hartford* v. *Pan Pacific Development (Connecticut), Inc.*, supra, 485. "Although related, the court's authority to act pursuant to a statute is different from its subject matter jurisdiction. The power of the court to hear and determine, which is implicit in jurisdiction, is not to be confused with the way in which that power must be exercised in order to comply with the terms of the statute. *Bailey* v. *Mars*, 138 Conn. 593, 601, 87 A.2d 388 (1952). . . . *Amodio* v. *Amodio*, 247 Conn. 724, 727–28,

724 A.2d 1084 (1999)." (Internal quotation marks omitted.) *Beizer* v. *Dept. of Labor*, 56 Conn. App. 347, 362, 742 A.2d 821, cert. denied, 252 Conn. 937, 747 A.2d 1 (2000).

In *Yaremich* v. *Lam*, 71 Conn. App. 650, 803 A.2d 369 (2002), this court stated: "The authority to open and vacate a judgment is within the inherent power of the trial courts. . . . A motion to open and vacate should be granted when the court, acting reasonably, finds good cause to do so." (Citation omitted.) Id., 653; *Paddock* v. *Paddock*, 22 Conn. App. 367, 372, 577 A.2d 1087 (1990). A family support magistrate has the inherent authority to open a default judgment of paternity when presented with a motion to open filed by a party with standing to do so. The magistrate had subject matter jurisdiction over the paternity action and the authority to open and to vacate the default judgment in this case based on the child's independent and fundamental interest in an accurate determination of his paternity. The magistrate in this case has not yet acted on the motion to open. Magistrate Lifshitz permitted the parties to file briefs on the issues presented by the child's motion to open, and the state appealed to the Superior Court prior to the expiration of the time for filing the briefs. As Magistrate Lifshitz had not yet made any decision, the state's appeal to the Superior Court was premature.

The decision of the Superior Court is vacated and the matter is remanded to the family support magistrate for further proceedings with direction also to consider the child's motion to open the default judgment of paternity on the basis of the child's independent right to an accurate determination of paternity in that proceeding.

In this opinion the other judges concurred.