******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KELLER, J., concurring. I concur in the well reasoned analysis and result set forth in the majority opinion. In determining whether the trial court properly has opened a paternity acknowledgement, we are constrained by the statutory authority that our legislature has conferred on family support magistrates in General Statutes § 46b-172.

I write separately to draw attention to what I believe is an obvious shortcoming of our acknowledgement of paternity statute, § 46b-172, which, as the present case illustrates, easily may be abused. I do so not merely in light of my experience as an Appellate Court judge, but in light of my experience as a family support magistrate and a Superior Court judge, all of which has made me keenly aware of the late surfacing problems that frequently arise from the operation of the statute in its current form.

Simply put, questions surrounding a child's paternity readily may be resolved *accurately* by DNA testing. Fortunately, DNA testing is readily available and far less invasive and costly than it has been in the past. In light of the importance of the issue of a child's paternity,[1] I believe it would be worthwhile for our legislature to consider revising the statute such that it requires the Department of Public Health, as a prerequisite to accepting a paternity acknowledgement, to require the submission of DNA testing results that are consistent with the paternity acknowledgement.

In the present case, there is no dispute that the plaintiff, Geoffrey M., Jr.,[2] is not the child's biological father. Under § 46b-172, an acknowledgement of paternity depends upon the accuracy of the representations of the putative father and the mother of the child, not a more reliable source, such as DNA testing. In the present case, the plaintiff and the defendant, Asia A. M., who is the mother of the child at issue, effectively utilized the statute to accomplish an adoption of the child by the plaintiff. They did so with full knowledge that the plaintiff was not the child's biological father, without first having to terminate the parental rights of the biological father, and without having to be subjected to the scrutiny that any proposed adopted parent would be subject to under our established procedures regarding termination of parental rights and adoptions in the juvenile and probate courts. And, given the restrictions in the statute, this court is compelled to perpetuate the fabrication of the plaintiff and the child's mother, the negative effects of which are likely to be deeply personal and long-lasting for the child.

Although I believe that this court has reached the correct result under the current state of our law, I

remain hopeful that our legislature will take reasonable steps to ensure accuracy in the acknowledgement of paternity process, thereby preventing consequences such as those reflected in the present case.

[1] Nearly fifteen years ago, this court, in *Ragin* v. *Lee*, 78 Conn. App. 848, 861–63, 829 A.2d 93 (2003), aptly discussed the fundamental interest that a child has in an accurate determination of his or her paternity: "The United States Supreme Court has recognized that both the child and the defendant in a paternity action have a compelling interest in the accuracy of such a determination. . . . Connecticut has long recognized that children have a separate and independent interest in family relations matters. . . . Our Supreme Court has recognized that both the father and the child in a paternity proceeding have an interest in seeing that their rights to companionship, care and custody are accurately adjudicated. . . . [T]he child's interests also extend to [his or her] health, which may depend on an accurate family medical history. . . . The child's interests in this regard are particularly strong. Any determination that a particular individual is a child's biological father may have profound sociological and psychological ramifications. . . . It is in the child's interest not only to have it adjudicated that *some* man is his or her father and thus liable for support, but to have some assurance that the correct person has been so identified. . . . In his concurrence in [*Palomba*] *v. Gray*, 208 Conn. 21, 543 A.2d 1331 (1988), Associate Justice David M. Shea stated that the issue of paternity is of paramount importance to the child and that the court should exercise its authority to require genetic marker tests where the parties neglect to provide them. Id., 37 (*Shea, J.,* concurring). . . .

"Courts in other jurisdictions have found that a child has a right to pursue paternity and support issues, and to accuracy in a paternity determination. . . .

"We hold that a child who is the subject of a paternity action has a fundamental interest in an accurate determination of paternity that is independent of the state's interest in establishing paternity for the benefit of obtaining payment for the child's care and any interest that the parents may have in the child." (Citations omitted; emphasis in original; internal quotation marks omitted.)

[2] See footnote 1 of the majority opinion.