******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOYCE SNYDER *v.* GLADEVIEW HEALTH
CARE CENTER ET AL.
(AC 35474)

Beach, Sheldon and Keller, Js.

*Argued February 14—officially released April 29, 2014*

(Appeal from the Workers' Compensation Review
Board.)

*Kenneth J. McDonnell*, with whom, on the brief, was
*William P. Monigan*, for the appellant (plaintiff).

*Douglas M. Connors*, with whom, on the brief, was
*Samuel I. Reich*, for the appellees (defendants).

*Opinion*

SHELDON, J. The plaintiff Peter Snyder, as the executor of the estate of his deceased wife, Joyce Snyder (claimant), appeals from the decision of the Workers' Compensation Review Board (board) affirming the ruling of the Workers' Compensation Commissioner (commissioner) that a stipulated settlement that was prepared by the defendant Gladeview Health Care Center,[1] but signed only by the claimant, was not enforceable. On appeal, the plaintiff claims that: (1) the defendant was bound by the stipulated settlement; (2) the commissioner was required to approve the stipulated settlement absent evidence of fraud, accident, mistake or surprise; and (3) the board erred in affirming the commissioner's denial of the plaintiff's motion to correct. We disagree with the plaintiff, and thus affirm the decision of the board.

The following facts and procedural history are relevant to our resolution of the plaintiff's claims. The claimant was employed by the defendant as a registered nurse for approximately ten years. On January 22, 1997, she sustained a lower back injury during the course of her employment with the defendant. As a result of that injury, the claimant underwent three surgeries on her spine and was unable to return to work. At the time of the claimant's third surgery, her treating physician noticed that she had an abnormally low white blood cell count and referred her to an oncologist, who diagnosed her as suffering from acute myelogenous leukemia, of which she informed the defendant.

The claimant and the defendant began discussing the possibility of settling her workers' compensation case in October, 2003. On or about January 21, 2011, as part of an anticipated final settlement of the case, the United States Department of Health and Human Services approved a proposed Medicare set-aside trust, which was to have paid the claimant $2512 annually, commencing on February 24, 2012, and continuing until the date of her death or February 24, 2022, whichever occurred first. In addition to this Medicare set-aside account, the defendant agreed to make a single final payment to the claimant in the amount of $75,000.

On February 3, 2011, the defendant sent the claimant an electronic version of the full and final stipulation it had drafted for her approval and requested that her counsel schedule an approval hearing before the commissioner. On February 4, 2011, the claimant signed the stipulation in the presence of her attorney, her husband and another witness, and her counsel requested a hearing before the commissioner to approve the stipulation. The following day, on February 5, 2011, the claimant died because of complications from leukemia.

On February 8, 2011, by way of an e-mail, the defendant's counsel acknowledged receipt of the claimant's

hearing request form. Thereafter, on March 1, 2011, counsel for the claimant and the defendant appeared for the scheduled hearing before the commissioner with the intention of presenting the stipulation for approval. At the hearing, however, the claimant's counsel informed the commissioner and the defendant's counsel of the claimant's recent death. Upon learning that the claimant had died, the defendant, through counsel, withdrew its consent to submitting the proposed stipulation for the commissioner's approval. The hearing was therefore adjourned without presenting the stipulation to the commissioner for approval.

On October 4, 2011, at the plaintiff's request, counsel for the claimant and the defendant appeared before the commissioner at a formal hearing where they were permitted to present evidence on the issue of whether the stipulation should be approved. Thereafter, on February 2, 2012, the commissioner issued a written ruling denying the plaintiff's request to approve the stipulation and dismissing his claim. In paragraph six of the ruling, the commissioner noted that "[t]he settlement was never properly before a commissioner nor was it approved prior to the claimant's death, nor did the [defendant] sign the settlement documents." On February 16, 2012, the plaintiff filed a motion to correct this paragraph of the commissioner's ruling, seeking to strike that paragraph and replace it with the following language: "The settlement was properly before the commissioner on March 1, 2011 when the [defendant] appeared through counsel at the scheduled hearing to approve the parties' written stipulation and then, after learning that the claimant had passed away, the [defendant's] counsel refused to physically sign a hard copy of its own written stipulation and withdrew its request that the [c]ommission approve the written stipulation." The commissioner denied the plaintiff's motion to correct on February 21, 2012.

The plaintiff subsequently appealed from the commissioner's rulings to the board, which affirmed the commissioner's order of dismissal, finding that "when an agreement which is not executed by both parties is presented to the [c]ommission for approval it is axiomatic that both parties must assent to its approval at that hearing. The trial commissioner . . . reviewed the circumstances herein carefully, and provided a clear rationale for his decision not to approve the settlement. As the conclusions of the trial commissioner are consistent with precedent, they are not contrary to law." This appeal followed.

"As a threshold matter, we set forth the standard of review applicable to workers' compensation appeals. The principles that govern our standard of review in workers' compensation appeals are well established. The conclusions drawn by [the commissioner] from the facts found must stand unless they result from an

incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . It is well established that [a]lthough not dispositive, we accord great weight to the construction given to the workers' compensation statutes by the commissioner and review board. . . . Statutory construction is a question of law and therefore our review is plenary. . . .

"Although the [Workers' Compensation Act (act), General Statutes § 31-275 et seq.] does not explicitly provide for [stipulated settlement agreements], we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation. . . . [O]nce an agreement is reached, [General Statutes § 31-296[2] provides that] a commissioner may approve the agreement if it conforms in every regard to the provisions of chapter 568 of the General Statutes. . . . Approval of . . . a stipulation by the commissioner is not an automatic process. It is his function and duty to examine all the facts with care before entering an award, and this is particularly true when the stipulation presented provides for a complete release of all claims under the act. . . . Once approved, an Award by Stipulation is a binding award which, on its terms, bars a further claim for compensation unless [General Statutes §] 31-315, which allows for modification, is satisfied." (Citations omitted; footnote altered; internal quotation marks omitted.) *O'Neil* v. *Honeywell, Inc.*, 66 Conn. App. 332, 335–37, 784 A.2d 428 (2001), cert. denied, 259 Conn. 914, 792 A.2d 852 (2002).

The plaintiff first argues that the defendant was bound by the written stipulation because it prepared the stipulation for the claimant and the claimant signed and agreed to it before her death. In support of this argument, the plaintiff asserts that the commissioner failed to follow board precedent such as *Festa* v. *Hamden*, No. 3052, CRB 3-95-4 (October 16, 1996), and *Drozd* v. *Connecticut/DMR Southbury Training School*, No. 5158, CRB 5-06-11 (October 19, 2007). We are not persuaded.

In *Festa*, the plaintiff and the defendants, through their counsel, reported to the commissioner at a formal hearing that they had reached an agreement to settle the plaintiff's case arising from his compensable elbow injury. At the hearing, counsel for the parties explained the terms of the proposed settlement, and the plaintiff stated that he understood its terms. At a subsequent hearing on the defendants' motion to enforce the stipulation, the plaintiff testified before a different commissioner that he is a diabetic and has bouts of hypoglycemia that render him dizzy and confused. That commissioner found that at the time the settlement was being discussed at the prior hearing, the plaintiff was suffering from such an attack and did not fully under-

stand the terms of the settlement. The plaintiff never signed the agreement, and, in denying the defendants' motion to enforce the agreement, the commissioner declared it to be null and void. The defendants petitioned the board for review of the commissioner's decision, arguing that the record revealed that the plaintiff understood the nature of the stipulation and that he should not be allowed to change his mind after agreeing to it. The board disagreed with the defendants, ruling that the stipulation could not be enforced against the plaintiff because "there was significant doubt as to the [plaintiff's] capacity to understand the nature and extent of the stipulation . . . coupled with the fact that the [plaintiff] never actually signed the stipulation . . . ."

The plaintiff misstates the holding of *Festa* by asserting that the board in that case held that the signatures of both parties were not required before a stipulation could be approved by the commissioner. Although the board in that case noted the fact that the plaintiff before it had never signed the stipulation, that was not the determinative factor upon which the board relied in ruling on the stipulation's enforceability. The facts presented to the board in *Festa* are different from those in the present case for several reasons. In *Festa*, unlike in this case, the plaintiff had not signed the stipulation prior to its submission to the commissioner for approval. Further, the issue in *Festa* did not center around the fact that the plaintiff had not signed the stipulation, but rather around the plaintiff's mental capacity to understand the nature and the extent of the stipulation in light of the hypoglycemic attack he had suffered on the morning of the approval hearing. At no point in its decision in *Festa* did the board hold that a stipulation without the plaintiff's physical signature still would be a valid and binding agreement on the parties. Thus, the plaintiff's use of *Festa* to support the argument that the commissioner in this case acted arbitrarily in holding that the defendant was required to sign the stipulation is unavailing.

The plaintiff also relies on *Drozd* v. *Connecticut/DMR Southbury Training School*, supra, No. 5158, CRB 5-06-11, for the proposition that it would not be inequitable under the facts of the present case to enforce the agreement against the defendant. We disagree. In *Drozd*, counsel for the defendant had advised the commissioner of the terms of a proposed settlement of the plaintiff's case, which the commissioner had approved subject to its memorialization in writing. On the day of the hearing to approve the settlement, counsel for the defendant reported that he did not have the authority to settle because the defendant had rescinded its offer. The plaintiff moved to enforce the unexecuted agreement, which was denied by the commissioner and upheld by the board on appeal. In affirming the commissioner's ruling that the settlement agreement was not

enforceable, the board held that the agreement had not been reduced to writing and that it would not enforce an oral agreement against one of the parties. The board explained that even if a defendant acts inequitably by not executing a settlement agreement, a commissioner lacks the authority to enforce the agreement against it without its consent. In the present case, the commissioner properly did not enforce the agreement against the defendant because the defendant had not consented to the agreement, as evidenced by its refusal to sign the settlement documents.

The plaintiff next argues that, in the absence of evidence of fraud, accident, mistake or surprise, the commissioner was required to approve the parties' stipulation. In support of this argument, the plaintiff relies on this court's decision in *O'Neil* v. *Honeywell, Inc.*, supra, 66 Conn. App. 338–39. The defendant responds that *O'Neil* is inapplicable, arguing instead that this case is controlled by *Secola* v. *Connecticut Comptroller's Office*, No. 3102, CRB 5-95-06 (February 26, 1997). We agree with the defendant.

In *O'Neil*, the administratrix of the decedent's estate appealed to this court from the board's ruling affirming the commissioner's decision to open and set aside the parties' approved stipulation. The parties had negotiated a full and final settlement of the decedent's case arising from a compensable spinal injury, and both parties signed a stipulation setting forth the terms of the settlement in September, 1996. On October 4, 1996, the decedent died from an accidental overdose of prescription drugs. Without notifying the defendant second injury fund of the decedent's death, counsel for the decedent presented the stipulation to the commissioner at a hearing about which the defendant was never provided notice. The stipulation was approved by the commissioner at that hearing. The defendant was later notified of the decedent's death and moved to open the approved stipulation. The commissioner granted the motion in order to afford the defendant another hearing, at which the defendant would have the opportunity to object to the approval of the stipulation if it chose to do so. The plaintiff appealed from this ruling to the board, which upheld the commissioner's decision. The plaintiff appealed to this court from the board's affirmance of the commissioner's ruling, and this court reversed the decision of the board, holding that the commissioner did not have the authority to open and set aside the approved stipulation absent evidence of fraud, accident, mistake or surprise.

*O'Neil* is distinguishable from the present case for several reasons. *O'Neil* involved the opening of a previously approved agreement, not the commissioner's threshold decision of whether or not to approve a stipulated agreement between the parties, as is the case here. Both the decedent and the defendant in *O'Neil* had

signed the stipulated agreement, and it had been approved by the commissioner without knowledge of the decedent's death. In the present case, by contrast, only the claimant had signed the stipulated agreement prior to her death, and the commissioner never approved it. This court stated in *O'Neil* that, "under the recognized grounds for equitable interference . . . neither the court nor the plaintiff had a duty to inform the defendant of the approval hearing and the claimant's death *after* the agreement was signed, and their failure to do so could not have affected the defendant's ability to make a defense because the parties already had reached a 'full, final and complete' settlement of all claims arising from the injury." (Emphasis in original.) *O'Neil* v. *Honeywell, Inc.*, supra, 66 Conn. App. 339. Because, in the present case, we are not presented with a settlement agreement executed by both parties and approved by the commissioner before the claimant's death, *O'Neil* does not govern this claim. Rather, we conclude that *Secola*, which is more factually similar to the present case, provides us with clear guidance on the issue presented.

In *Secola*, the board reviewed the commissioner's refusal to approve a stipulation that both parties had signed and agreed to prior to the claimant's death from cancer. *Secola* v. *Connecticut Comptroller's Office*, supra, No. 3102, CRB 5-95-06. The commissioner found that the insurer was not informed of the claimant's cancer diagnosis during settlement negotiations and that her illness had a direct effect on the amount of future benefits for which the defendant might be liable. Id. The board affirmed the commissioner's decision, stating that "protecting the employee's rights does not mean ignoring the rights of the employer or insurer. Fairness and equity are two-way streets, and the commissioner is certainly entitled to consider more than the claimant's position in deciding whether a stipulation should be approved." Id. The board concluded that, "[j]ust as the commissioner is entitled to reject a stipulation if the claimant has second thoughts, he may exercise his authority to withhold approval of a stipulation if the respondent no longer concords with its terms when it is submitted for ratification." Id.

The holding of *Secola* is instructive in the present case. Here, although the defendant had not signed the stipulation, as had the defendant in *Secola*, the commissioner found that the defendant was no longer in agreement with the stipulation at the time it was submitted to the commissioner for approval.[3] "The commissioner . . . may exercise his authority to withhold approval of a stipulation if the respondent no longer concords with its terms when it is submitted for ratification." *Secola* v. *Connecticut Comptroller's Office*, supra, No. 3102, CRB 5-95-06. The board applied the findings of *Secola* to the present case and determined that there were no equitable considerations favoring enforcement

of the settlement agreement against the defendant. "Where the commissioner has reason to suspect that the . . . stipulation is no longer agreed to by both parties at the time it is being offered for approval . . . he is entitled to reject that agreement." *Considine* v. *Slotnik*, No. 3468, CRB 04-96-11 (May 6, 1998). Simply stated, "no stipulation is binding until it has been approved by the commissioner." *Muldoon* v. *Homestead Insulation Co.*, 231 Conn. 469, 480, 650 A.2d 1240 (1994). Without the commissioner's approval, the stipulation between the parties could not be operative within the confines of the act. The commissioner's findings support his decision to deny approval of the stipulation. We therefore affirm his decision.

The plaintiff last argues that the board erred in affirming the commissioner's denial of the plaintiff's motion to strike and motion to correct because the commissioner's findings in paragraph six of his ruling were not supported by the evidence and were contrary to material facts that were admitted or undisputed. We disagree.

"[T]he finding of a commissioner cannot be corrected by striking out or adding paragraphs, unless the record discloses that he has found facts without evidence, or failed to include material facts which were admitted or undisputed . . . ." *Palumbo* v. *George A. Fuller Co.*, 99 Conn. 353, 356–57, 122 A. 63 (1923). The plaintiff, by way of motion, sought to correct and to strike the commissioner's finding of fact that "[t]he settlement was never properly before a commissioner nor was it approved prior to the claimant's death, nor did the [defendant] sign the settlement documents." The plaintiff moved to replace this finding with language stating that the settlement was properly before the commissioner and that, after learning that the claimant had died, the defendant's counsel withdrew its request that the commissioner approve the written stipulation.

The record in this case does not reveal that the commissioner's findings were unsupported by the evidence. By contrast, the plaintiff's suggested substituted findings, had they been accepted by the board, would not have been supported by the evidence or by undisputed facts. There is nothing in the record to suggest that the stipulation was properly before the commissioner at the time of the hearing. Rather, because the defendant had not executed the stipulation and withdrew its consent to submit the stipulation for approval, the stipulation was never properly before the commissioner. For the commissioner to find otherwise, or for the board to have reversed the commissioner's dismissal of the plaintiff's motion to correct and motion to strike, would have been contrary to the evidence presented and the undisputed facts of this case. Thus, because the commissioner's findings in paragraph six were supported by the evidence, we conclude that the board did not err

in affirming the commissioner's denial of the plaintiff's motion to strike and motion to correct.

The decision of the Workers' Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] Arrowhead Capital Corporation, the workers' compensation insurer for the defendant Gladeview Health Care Center, also is a defendant and a party on appeal. For convenience, we refer in this opinion to Gladeview Health Care Center as the defendant.

[2] General Statutes § 31-296 (a) provides in relevant part: "If an employer and an injured employee . . . at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, the commissioner shall so approve it. A copy of the agreement, with a statement of the commissioner's approval, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . ."

[3] At the time the stipulation was scheduled for approval by the commissioner, the defendant was unaware that the claimant had died three weeks prior, and counsel for the defendant testified at the formal hearing before the commissioner that, "[h]ad [he] known that there were health issues aside from the workers' compensation claim, [his] advice to them would have been to consider whether or not they wanted to go forward with a full and final stipulation since a stipulation would necessarily involve future uncertain benefits, and with a person of declining health they may have wished to forgo settling that case since there was no present benefit that was being paid or was being threatened at that time." The claimant in the present case disclosed her medical records showing her diagnosis of leukemia, but her counsel withheld the information of her death from the defendant prior to the approval hearing before the commissioner. By contrast, the decedent in *Secola* had withheld her terminal illness diagnosis from the defendant prior to the parties' execution of the stipulation.