******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PAUL DOMBROWSKI *v.* CITY
OF NEW HAVEN ET AL.
(AC 40899)

Alvord, Moll and Norcott, Js.

*Syllabus*

The plaintiff, a retired police officer, appealed to this court from the decision
of the Compensation Review Board, which affirmed the decision of the
Workers' Compensation Commissioner denying his motion to open a
certain stipulation that he and the defendants, the city of New Haven
and its workers' compensation administrator, had executed to settle
several pending workers' compensation claims related to his employ-
ment with the city. The plaintiff had agreed to accept a settlement of
his claims for $22,500. On the morning of the stipulation approval hearing
before the commissioner, the defendants' counsel presented the plaintiff
with the stipulation and a settlement agreement, neither of which the
plaintiff had seen before and both of which he signed. The stipulation
did not reference the settlement agreement, which required the plaintiff
to waive, inter alia, causes of action under the Age Discrimination in
Employment Act of 1967 (29 U.S.C. § 621 et seq.). At the stipulation
approval hearing, the commissioner canvassed the plaintiff with regard
to the stipulation, and approved it after determining that the plaintiff
had executed it knowingly and voluntarily. None of the parties asked
the commissioner to review or to sign the settlement agreement, and
the commissioner did not examine or sign the settlement agreement.
After the plaintiff received a $22,500 settlement check, he returned it
and sought to open the stipulation pursuant to statute (§ 31-315). He
claimed, inter alia, that the stipulation was nugatory on the ground
that his execution of the settlement agreement was not knowing and
voluntary because the parties had agreed to settle only the workers'
compensation claims. The commissioner concluded that opening the
stipulation was not warranted because, inter alia, the plaintiff had failed
to offer any evidence of fraud, misrepresentation, accident or mistake.
The board thereafter affirmed the commissioner's denial of the motion
to open, determining that the parties had agreed that the plaintiff would
receive $22,500 for the withdrawal of the workers' compensation claims,
that he was canvassed with respect to the stipulation by the commis-
sioner who presided at the stipulation approval hearing, and that no
mistake was made that warranted the opening of the stipulation. The
board further concluded that the plaintiff would need to seek redress in
a forum that has jurisdiction to consider issues relative to the settlement
agreement. On the plaintiff's appeal to this court, *held* that the board
did not err in affirming the commissioner's denial of the plaintiff's motion
to open the stipulation, as the board and the commissioner correctly
concluded that the Workers' Compensation Commission lacked subject
matter jurisdiction to entertain issues that related to the settlement
agreement: the plaintiff presented no claims that challenged the integrity
of the settlement of his workers' compensation claims, as he had agreed
to be paid $22,500 in exchange for the settlement, he was canvassed,
adequately by his own admission, with respect to the stipulation, and
the $22,500 sum was remitted to him, and the issues he raised as to the
waiver of any rights he may have had were beyond the commission's
jurisdiction, which is limited by statute to claims arising out of the
Workers' Compensation Act (§ 31-275 et seq.); moreover, this court
declined to review the merits of the various claims the plaintiff raised
in his appellate briefs, as those claims were not presented to the commis-
sioner during the underlying proceedings.

Argued September 19—officially released December 10, 2019

*Procedural History*

Appeal from the decision of the Workers' Compensa-
tion Commissioner for the Third District denying the
plaintiff's motion to open a certain stipulation, brought

to the Compensation Review Board, which affirmed the commissioner's decision, and the plaintiff appealed to this court. *Affirmed.*

*Paul T. Dombrowski*, self-represented, the appellant (plaintiff).

*Brian L. Smith*, for the appellees (defendants).

*Opinion*

MOLL, J. The self-represented plaintiff, Paul Dombrowski, appeals from the decision of the Compensation Review Board (board) affirming the decision of the Workers' Compensation Commissioner for the Third District (commissioner) of the Workers' Compensation Commission (commission), denying the plaintiff's motion to open a stipulation executed by the plaintiff and the defendants, the city of New Haven (city) and the Connecticut Interlocal Risk Management Agency (CIRMA). On appeal, the plaintiff raises a number of claims that, in essence, challenge the propriety of the board's decision affirming the commissioner's denial of his motion to open. We affirm the decision of the board.

The following procedural history and facts, as found by the commissioner in her "finding and dismissal," dated October 11, 2016, or as undisputed in the record, are relevant to our resolution of this appeal. The plaintiff is a retired police officer who was formerly employed by the city.[1] Following his retirement, the plaintiff sought to settle certain pending workers' compensation claims relating to several injuries that he had sustained during his employment with the city. After numerous informal hearings, the plaintiff, without the assistance of counsel, agreed to accept a global settlement of his workers' compensation claims for a lump sum payment of $22,500. The settlement was contingent upon the approval of the funds by the city's litigation settlement committee, which approved the funds on September 23, 2015. On September 29, 2015, the commission issued a notice providing that a stipulation approval hearing was scheduled for September 30, 2015.

On the morning of September 30, 2015, prior to the stipulation approval hearing, the plaintiff, accompanied by Craig Miller, the president of the police union, met with the defendants' counsel. The defendants' counsel presented the plaintiff with two documents: (1) a "Stipulation," dated September 28, 2015 (stipulation); and (2) a "Settlement Agreement, General Release and Covenant Not to Sue," dated September 29, 2015 (settlement agreement). The stipulation provided in relevant part: "[I]t is agreed by and between the parties hereto that the [defendants] shall pay to the [plaintiff] in addition to the compensation and medical benefits already paid by the [defendants] the further sum of [$22,500], the same is to be in full, final and complete settlement, adjustment accord, and satisfaction of all claims which the aforesaid [plaintiff] might otherwise have against the [defendants], or either of them, and be made and accepted in lieu of all other compensation payments, in accordance with our [Workers' Compensation Act (act), General Statutes § 31-275 et seq.]." The stipulation did not reference the settlement agreement. The settlement agreement provided in relevant part: "[The plaintiff] . . . for and in consideration of both monetary

sums and by action previously recited within the content of [the stipulation] attached as Exhibit A hereto, receipt of which is hereby acknowledged, [does] remise, release and forever discharge . . . [the city] . . . as to any and all actions, causes and causes of action, sums of money, covenants, contracts, controversies, agreements, promises, damages, claims and demands whatsoever, in law or in equity . . . as a result of [the plaintiff's] employment or with severance of [the plaintiff's] employment with [the city] from the commencement of [the plaintiff's] employment with [the city] to the date of [the plaintiff's] execution of the [settlement agreement], whether known or unsuspected, including all claims, demands, or causes of action under any federal or state law, regulation or decision including but not limited to causes of action under the [Workers'] Compensation Laws of the State of Connecticut . . . [t]he Age Discrimination in Employment Act of 1967, 29 U.S.C. [§] 621 et seq. [ADEA] . . . [and] [a]ny other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance."[2] The settlement agreement also provided in relevant part: "[The plaintiff] represent[s] that [the plaintiff has] been advised that [the plaintiff] should consult and acknowledge[s] that [the plaintiff has] consulted a private attorney with respect to [the settlement agreement] and [has] been given an adequate opportunity to discuss all aspects of [the settlement agreement] with counsel of [the plaintiff's] choosing. [The plaintiff] agree[s] that [the plaintiff has] had twenty-one (21) days to consider this agreement. . . . [The plaintiff] further understand[s] that this settlement agreement is contingent upon approval of [the stipulation] attached as Exhibit A hereto. . . . [The plaintiff] further understands that for a period of seven (7) days following the execution of this agreement, he may revoke this [a]greement. This [a]greement shall not become effective or enforceable until the revocation period has expired." The plaintiff had not seen the stipulation or the settlement agreement prior to the morning of September 30, 2015. Nevertheless, he signed both documents.[3]

That same morning, Commissioner Jack R. Goldberg canvassed the plaintiff with regard to the stipulation. As part of the canvass, Commissioner Goldberg reviewed with the plaintiff forms entitled "Stipulation and What It Means"[4] and "Stipulation Questionnaire."[5] Commissioner Goldberg then approved the stipulation after determining that the plaintiff had executed the stipulation knowingly and voluntarily. None of the parties asked Commissioner Goldberg to review or sign the settlement agreement, and at no point did Commissioner Goldberg examine or sign the settlement agreement.

On October 1, 2015, a representative of CIRMA, the third-party administrator for the city, mailed to the

plaintiff a settlement check in the amount of $22,500. On or about October 7, 2015, the plaintiff brought the check to his police union office, signifying his rejection of the settlement agreement. On or about October 14, 2015, the police union returned the check to the plaintiff. On or about October 19, 2015, the plaintiff mailed the check to CIRMA with a note requesting that CIRMA accept the returned check. Following these events, the commission held informal hearings on January 15 and March 15, 2016, which resulted in "no resolution of the issues" among the parties. Thereafter, the commission held a formal hearing on March 31, 2016, during which the parties agreed that the plaintiff would file a motion to open the stipulation and the defendants would file a response thereto.

On May 6, 2016, the plaintiff, who was represented by counsel at the time, filed a motion to open, with an accompanying memorandum of law, seeking to open the stipulation (motion to open).[6] The plaintiff asserted that, prior to September 30, 2015, the parties had agreed to settle only the plaintiff's workers' compensation claims in exchange for the sum of $22,500, and that the settlement agreement constituted a unilateral expansion of the parties' agreement by the defendants. The plaintiff argued that he did not knowingly and voluntarily execute the settlement agreement, citing factors used in analyzing waivers of ADEA claims on the basis that the terms of the settlement agreement required him to waive causes of action arising under the ADEA. The plaintiff further argued that the stipulation was nugatory on the ground that his execution of the settlement agreement was not knowing and voluntary; however, the plaintiff expressly stated that he was not challenging the canvass conducted by Commissioner Goldberg that preceded the approval of the stipulation. In addition, the plaintiff contended that the commissioner had subject matter jurisdiction to open the stipulation pursuant to General Statutes § 31-315.[7] On July 18, 2016, the defendants filed an objection and an accompanying memorandum of law, arguing, inter alia, that the plaintiff failed to establish any cognizable ground upon which the commissioner could open the stipulation and that the commissioner lacked subject matter jurisdiction to interpret the terms of the settlement agreement, which, the defendants contended, was a separately executed agreement independent of the stipulation.

On October 11, 2016, Commissioner Nancy E. Salerno issued a decision, captioned "finding and dismissal," denying the motion to open. After setting forth a recitation of the parties' respective positions and her findings of fact, Commissioner Salerno concluded that opening the stipulation was not warranted because the plaintiff failed to offer any evidence of fraud, misrepresentation, accident, or mistake, and the plaintiff did not contest the adequacy of Commissioner Goldberg's canvass con-

cerning the stipulation. In addition, Commissioner Salerno concluded that Commissioner Goldberg approved the stipulation without taking into consideration the settlement agreement, and that, in accordance with our Supreme Court's holding in *Stickney* v. *Sunlight Construction, Inc.*, 248 Conn. 754, 730 A.2d 630 (1999), the commission lacked subject matter jurisdiction to interpret the terms of the settlement agreement. Thereafter, the plaintiff filed a petition for review with the board.

On appeal to the board, the plaintiff, through counsel, asserted that the commissioner erred in denying the motion to open,[8] contending that the stipulation was nugatory on the basis that Commissioner Goldberg did not review the settlement agreement and canvass the plaintiff as to whether he voluntarily and knowingly assented to the terms of the settlement agreement. The plaintiff relied primarily on the board's decision in *Leonetti* v. *MacDermid, Inc.*, No. 5623, CRB 5-11-1, 2012 WL 141552 (March 19, 2012), aff'd, 310 Conn. 195, 76 A.3d 168 (2013), in support of his argument. In addition, the plaintiff contended that the commissioner erred in concluding that she lacked subject matter jurisdiction to interpret the terms of the settlement agreement. In response, the defendants argued, inter alia, that the commissioner correctly concluded that the plaintiff failed to demonstrate any proper ground upon which to open the stipulation and that the commissioner lacked subject matter jurisdiction to interpret the terms of the settlement agreement.

On September 11, 2017, the board rendered its decision affirming the commissioner's denial of the motion to open. The board summarized the plaintiff's claim to be that Commissioner Goldberg erred in not examining whether the settlement agreement offered the plaintiff any consideration for withdrawing any claims that he may have had unrelated to the act. The board determined that the parties had agreed that the plaintiff would receive $22,500 as reasonable consideration for the withdrawal of his workers' compensation claims, the plaintiff was canvassed by Commissioner Goldberg with respect to the stipulation, and no mistake was made warranting the opening of the stipulation given that the plaintiff had received the consideration specified in the stipulation. Additionally, relying on *Stickney*, the board concluded that "[t]o the extent there was a failure to achieve a meeting of the minds relative to the issues in the settlement agreement which were beyond the jurisdiction of this commission, the [plaintiff] would need . . . to seek redress in a forum which has jurisdiction to consider such a dispute."[9] This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the relevant standard of review and principles of law governing our resolution of this appeal. "The board sits as an appellate tribunal

reviewing the decision of the commissioner. . . . The commissioner is the sole trier of fact and [t]he conclusions drawn by [the commissioner] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is [obligated] to hear the appeal on the record and not retry the facts. . . . On appeal, the board must determine whether there is any evidence in the record to support the commissioner's [decision]. . . . Our scope of review of [the] actions of the [board] is [similarly] . . . limited. . . . [However] [t]he decision of the [board] must be correct in law, and it must not include facts found without evidence or fail to include material facts which are admitted or undisputed." (Citation omitted; internal quotation marks omitted.) *Rodriguez* v. *State*, 76 Conn. App. 614, 621–22, 820 A.2d 1097 (2003).

"Long ago, we said that the jurisdiction of the [workers' compensation] commissioners is confined by the [a]ct and limited by its provisions. Unless the [a]ct gives the [c]ommissioner the right to take jurisdiction over a claim, it cannot be conferred upon [the commissioner] by the parties either by agreement, waiver or conduct. . . . While it is correct that the act provides for proceedings that were designed to facilitate a speedy, efficient and inexpensive disposition of matters covered by the act . . . the charter for doing so is the act itself. The authority given by the legislature is carefully circumscribed and jurisdiction under the act is clearly defined and limited to what are clearly the legislative concerns in this remedial statute. . . . A commissioner may exercise jurisdiction to hear a claim only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . Because of the statutory nature of our workers' compensation system, policy determinations as to what injuries are compensable and what jurisdictional limitations apply thereto are for the legislature, not the judiciary or the board, to make." (Internal quotation marks omitted.) *Leonetti* v. *MacDermid, Inc.*, 310 Conn. 195, 216–17, 76 A.3d 168 (2013).

Our Supreme Court previously has defined the term "stipulation" as follows: "A stipulation is a compromise and release type of settlement similar to settlements in civil personal injury cases where a claim is settled with a lump sum payment accompanied by a release of the adverse party from further liability." (Internal quotation marks omitted.) Id., 198 n.2. "Although the [act] does not explicitly provide for [stipulated settlement agreements], we have consistently upheld the ability to compromise a compensation claim as inherent in the power to make a voluntary agreement regarding compensation. . . . [O]nce an agreement is reached, [General

Statutes § 31-296[10] provides that] a commissioner may approve the agreement if it conforms in every regard to the provisions of [the act]. . . . Approval of . . . a stipulation by [a] commissioner is not an automatic process. It is his [or her] function and duty to examine all the facts with care before entering an award, and this is particularly true when the stipulation presented provides for a complete release of all claims under the act. . . . Once approved, an Award by Stipulation is a binding award which, on its terms, bars a further claim for compensation unless [§] 31-315, which allows for modification, is satisfied." (Footnote in original; internal quotation marks omitted.) *Snyder* v. *Gladeview Health Care Center*, 149 Conn. App. 725, 729–30, 90 A.3d 278, cert. denied, 312 Conn. 918, 94 A.3d 642 (2014).

"Our Supreme Court has stated that [a]lthough the commission may modify awards under certain circumstances, its power to do so is strictly limited by statute. . . . Section 31-315 allows the commission to modify an award in three situations. First, modification is permitted where the incapacity of an injured employee has increased, decreased or ceased, or . . . the measure of dependence on account of which the compensation is paid has changed . . . . Second, the award may be modified when changed conditions of fact have arisen which necessitate a change of [the award]. . . . Third, [t]he commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. This provision extends the commission's power to open and modify judgments to cases of accident . . . to mistakes of fact . . . and to fraud . . . but not to mistakes of law. . . . This provision, however, does not independently confer authority to modify awards for reasons not otherwise enumerated in § 31-315." (Internal quotation marks omitted.) *Rodriguez* v. *State*, supra, 76 Conn. App. 622.

On appeal, the plaintiff, who is representing himself, sets forth an assortment of claims contesting the propriety of the board's decision affirming the commissioner's denial of the motion to open. As a preliminary matter, we note that the plaintiff raises various claims in his appellate briefs that, on the basis of our review of the record before us, were not presented to the commission during the underlying proceedings. For instance, he asserts that the defendants' counsel failed to abide by a "stipulation approval procedure," the stipulation contained a number of errors, and there is cause to open the stipulation because it contained "broad and confusing language," it was "poorly negotiated," and certain documents were not submitted to the commission for review. "We acknowledge that the plaintiff is a self-represented party and that it is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice

liberally in favor of the [self-represented] party. . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience . . . . This rule of construction has limits, however. Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Traylor* v. *State*, 332 Conn. 789, 806, 213 A.3d 467 (2019). "As a general matter, we do not decide issues raised for the first time on appeal." *Jones* v. *Connecticut Children's Medical Center Faculty Practice Plan*, 131 Conn. App. 415, 432, 28 A.3d 347 (2011). Accordingly, we decline to review the merits of the plaintiff's claims that he is raising for the first time on appeal. See id., 432–33 (declining to review claim that plaintiff did not raise before either Workers' Compensation Commissioner or board).

We construe the crux of the plaintiff's preserved appellate claims to be that the board and the commissioner erroneously concluded that the commission lacked subject matter jurisdiction to consider the terms of the settlement agreement. More specifically, it appears from a close review of the motion to open that the plaintiff's chief concern regarding the settlement agreement is his relinquishment of any rights that he may have had to bring causes of action against the defendants unrelated to his workers' compensation claims, such as causes of action arising out of the ADEA. For the reasons that follow, we conclude that the board did not err in affirming the commissioner's denial of the motion to open.

Our analysis begins with an overview of our Supreme Court's decision in *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 754, upon which the commissioner and the board relied in concluding that the commission lacked subject matter jurisdiction to interpret the terms of the settlement agreement. In *Stickney*, the court held that a Workers' Compensation Commissioner lacked subject matter jurisdiction to entertain an insurer's motion to open and modify a voluntary agreement for the purpose of substituting a different insurer as the entity responsible for payment of an injured employee's workers' compensation benefits. Id., 757–59. The court determined that, pursuant to the plain language of General Statutes (Rev. to 1985) § 31-278,[11] a "commissioner's subject matter jurisdiction is limited to adjudicating claims arising under the act, that is, claims by an injured employee seeking compensation from his [or her] employer for injuries arising out of and in the course of employment." Id., 762. The court then observed that the insurer's motion to open "differ[ed] from the traditional claim to be adjudicated under the act . . . because the issue underlying [the insurer's] motion [was] an insurance coverage issue,

requiring the evaluation of insurance policies and the application of contract law. Put more generally, resolving the central issue in the motion require[d] application of laws other than the provisions of the act. Thus, although the injured employee's original claim 'arose under the act,' the question [the court had to] address in [the] appeal [was] whether the motion to open, itself, [was] beyond the jurisdictional bounds circumscribed by the explicit enabling legislation of the act." Id., 762–63. The court concluded that none of the statutory provisions of the act cited by the insurer conferred subject matter jurisdiction on the Workers' Compensation Commissioner to determine the coverage question at issue and that the insurer's claim had to be resolved in another forum. Id., 768–69.

We next turn to our Supreme Court's decision in *Leonetti* v. *MacDermid, Inc.*, supra, 310 Conn. 195. In *Leonetti*, the principal issue before the court was whether the board properly affirmed a Workers' Compensation Commissioner's refusal to approve as a valid stipulation a termination agreement executed by a claimant and his employer. Id., 198–99. Article II of the termination agreement provided in relevant part that the claimant agreed to release the employer from a variety of claims, including workers' compensation claims arising out of, relating to, or connected to, inter alia, the claimant's employment with the employer or the termination of that employment. Id., 199–200. Article III of the termination agreement provided in relevant part that, as consideration, the claimant, inter alia, would be paid twenty-seven weeks of "severance pay" predicated on the claimant's base salary, totaling $70,228.51, and that the claimant understood that the consideration would serve as "*all* that [the claimant] [was] entitled to receive from [the employer]." (Emphasis in original; internal quotation marks omitted.) Id., 200. The claimant initially hesitated to execute the termination agreement because he did not want to release the employer from liability for a preexisting workers' compensation claim; however, the claimant signed the agreement after having received a letter from the employer indicating that it would withdraw the severance pay offer if the claimant failed to sign the agreement within ten days. Id., 201. Subsequently, the commissioner held a formal hearing to determine the enforceability of the termination agreement's language regarding the release of the claimant's workers' compensation claim. Id., 202. The Workers' Compensation Commissioner (1) concluded that, without approval by a Workers' Compensation Commissioner, the termination agreement did not waive the parties' rights and obligations under the act, and (2) declined to approve the agreement as a full and final stipulation of the claimant's workers' compensation claim because, pursuant to the agreement, the claimant was not receiving any consideration for the release of his claim.[12] Id., 202–203.

The employer appealed to the board, which affirmed the ruling of the Workers' Compensation Commissioner. Id., 203. In its decision, the board also refused to address the enforceability of the termination agreement as a whole, determining that its jurisdiction extended only to the portion of the agreement concerning the claimant's workers' compensation claim. Id., 204. Specifically, the board stated: "Whether as a matter of law the contract as signed by the parties, apart from the references to the claimant's workers' compensation claim, is an enforceable termination agreement is a determination for another forum; [the board's] jurisdiction is limited to whether the document serves [as] an acceptable instrument for releasing the claimant's workers' compensation claim, and [the board] find[s] that the record clearly supports the . . . commissioner's decision that it does not." (Internal quotation marks omitted.) Id., 216.

On appeal, our Supreme Court affirmed the decision of the board, concluding that (1) the execution of the termination agreement had no effect on the claimant's workers' compensation claim unless and until it was approved by a Workers' Compensation Commissioner, and (2) the board properly affirmed the Workers' Compensation Commissioner's refusal to approve the agreement, to the extent that it implicated the claimant's workers' compensation claim, on the ground that the claimant was not given any compensation for settling his workers' compensation claim. Id., 207–208, 215. In addition, the court rejected the employer's argument that the Workers' Compensation Commissioner and the board, in deciding whether to enforce the termination agreement, improperly declined to consider alleged " 'deceitful' " conduct by the claimant. Id., 216. The court observed that neither its precedent nor the provisions of the act cited by the employer conferred subject matter jurisdiction on the commission "over the general enforceability of severance agreements." Id., 217; see also id., 217–20. The court then determined that the alleged misconduct by the claimant, if true, had no bearing on the issue of whether the termination agreement should have been approved as a stipulation with respect to the claimant's workers' compensation claim. Id., 220. As to the remainder of the termination agreement, the court concluded: "The commission is not competent to rule on the rights and obligations of the parties to a contract when those rights and obligations do not involve the issues that the legislature has authorized the commission to consider. . . . The enforceability of the remainder of the agreement is not a question for the workers' compensation forum, and the [workers' compensation] commissioner and the board properly refused to decide that aspect of the dispute between the claimant and the [employer]." (Citations omitted.) Id., 220–21.

In the present case, the plaintiff agreed to be paid $22,500 in exchange for the settlement of his workers' compensation claims, he was canvassed, adequately by his own admission, with respect to the stipulation by Commissioner Goldberg, and thereafter the $22,500 sum was remitted to him. The plaintiff presented no claims in the motion to open challenging the integrity of the settlement of his workers' compensation claims; rather, the core issues for the plaintiff were his execution of the settlement agreement and the terms of the settlement agreement concerning the waiver of any rights he may have had unrelated to the act. Pursuant to *Stickney* and *Leonetti*, those issues are beyond the commission's jurisdiction, which is limited by statute to claims arising out of the act. As our Supreme Court explained in *Leonetti*, the commission cannot adjudicate the rights and obligations of parties with respect to contracts, or portions thereof, that have no nexus to the act. Accordingly, we reject the plaintiff's preserved appellate claims and conclude that the board and the commissioner correctly concluded that the commission lacked subject matter jurisdiction to entertain the issues raised by the plaintiff relating to the settlement agreement.[13]

The decision of the Compensation Review Board is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff represents that the city hired him in 1989 and that he retired in 2011.

[2] The settlement agreement provided that various other claims, demands, and causes of action were "remise[d], release[d] and forever discharge[d]," which, for purposes of our disposition of this appeal, we need not set forth in toto.

[3] The plaintiff represents that he reviewed the stipulation and the settlement agreement for approximately twenty to thirty minutes with Miller prior to signing the documents. The stipulation was signed by the plaintiff, the defendants' counsel, and Miller, acting as a witness. The settlement agreement was signed by the plaintiff, Miller in his capacity as the police union representative, and Meghan A. Woods, a member of the Connecticut bar, acting as a witness. Neither the defendants' counsel nor any other representative of the defendants signed the settlement agreement.

[4] "In order to assist trial commissioners in assessing the merits of a proposed settlement and 'assuring that a claimant comprehends the nature and scope of a stipulation' . . . the Workers' Compensation Commission . . . 'has promulgated a form entitled "Stipulation and What It Means" that enumerates the consequences of a stipulation from a claimant's point of view. The form explains to the claimant that the stipulation is a final settlement, that rights to future medical, disability and loss of income benefits may be lost by accepting the stipulation, and that one's right to a formal hearing is also waived by settling the case. The form also directs the claimant to ask any questions he or she may have about the stipulation and its effects. Before a claimant may agree to a stipulation, a commissioner must canvass the claimant to insure that he has considered these issues and still wants to settle his case.' " (Citation omitted.) *Leonetti* v. *MacDermid, Inc.*, No. 5623, CRB 5-11-1, 2012 WL 1451552, *4–5 (March 19, 2012), aff'd, 310 Conn. 195, 76 A.3d 168 (2013). In the present case, the "Stipulation and What It Means" form was signed by the plaintiff, the defendants' counsel, and Commissioner Goldberg.

[5] The "Stipulation Questionnaire" form contained fifteen numbered questions requesting information that, according to the form, was necessary for the approval of the stipulation. The "Stipulation Questionnaire" form was signed by the defendants' counsel, as the person completing the form, and

Commissioner Goldberg.

[6] The motion was captioned improperly as a motion to "reopen" the stipulation. "We note that because the decision had never been opened, the appropriate term is a motion to open." *Rodriguez* v. *State*, 76 Conn. App. 614, 617 n.5, 820 A.2d 1097 (2003).

[7] General Statutes § 31-315 provides: "Any award of, or voluntary agreement concerning, compensation made under the provisions of this chapter or any transfer of liability for a claim to the Second Injury Fund under the provisions of section 31-349 shall be subject to modification in accordance with the procedure for original determinations, upon the request of either party or, in the case of a transfer under section 31-349, upon request of the custodian of the Second Injury Fund, whenever it appears to the compensation commissioner, after notice and hearing thereon, that the incapacity of an injured employee has increased, decreased or ceased, or that the measure of dependence on account of which the compensation is paid has changed, or that changed conditions of fact have arisen which necessitate a change of such agreement, award or transfer in order properly to carry out the spirit of this chapter. The commissioner shall also have the same power to open and modify an award as any court of the state has to open and modify a judgment of such court. The compensation commissioner shall retain jurisdiction over claims for compensation, awards and voluntary agreements, for any proper action thereon, during the whole compensation period applicable to the injury in question."

[8] The plaintiff did not file a motion to correct challenging any of the commissioner's findings. See *Melendez* v. *Fresh Start General Remodeling & Contracting, LLC*, 180 Conn. App. 355, 367, 183 A.3d 670 (2018) ("[a] party seeking to challenge a finding of the commissioner as incorrect or incomplete must first do so by filing a motion to correct the challenged findings").

[9] Notwithstanding its decision affirming the commissioner's denial of the motion to open, the board noted that it had "some concerns relative to the practice of pursuing 'global settlements' between claimants and respondents at stipulation hearings before [workers' compensation] commissioners. A proper regard for equitable conduct would suggest that all proposed settlement documents be circulated in advance of such hearings so that the claimant may have a reasonable opportunity to fully apprise himself of the terms and conditions of all agreements sought by the respondents. The commission cannot address disputes outside its statutory ambit, but [the commission] can seek to minimize the likelihood of such disputes by directing parties to avoid 'settling on the courthouse steps' and to provide all anticipated documentation to claimants well in advance of stipulation-approval hearings."

We share the board's concern regarding the manner in which a purported global settlement was reached between the plaintiff and the defendants during the morning of the stipulation hearing. We are particularly troubled by the acknowledgement of the defendants' counsel during oral argument before this court that he presented a copy of the settlement agreement to the plaintiff *for the first time* on the morning of the stipulation hearing with the expectation that the plaintiff would sign the settlement agreement, notwithstanding that the settlement agreement contained a provision explicitly stating that the plaintiff had been given twenty-one days to consider it.

[10] "General Statutes § 31-296 (a) provides in relevant part: 'If an employer and an injured employee . . . at a date not earlier than the expiration of the waiting period, reach an agreement in regard to compensation, such agreement shall be submitted in writing to the commissioner by the employer with a statement of the time, place and nature of the injury upon which it is based; and, if such commissioner finds such agreement to conform to the provisions of this chapter in every regard, the commissioner shall so approve it. A copy of the agreement, with a statement of the commissioner's approval, shall be delivered to each of the parties and thereafter it shall be as binding upon both parties as an award by the commissioner. . . .' " *Snyder* v. *Gladeview Health Care Center*, 149 Conn. App. 725, 730 n.2, 90 A.3d 278, cert. denied, 312 Conn. 918, 94 A.3d 642 (2014).

[11] General Statutes (Rev. to 1985) § 31-278 provided in relevant part: "[E]ach commissioner shall have all powers necessary to enable him to perform the duties imposed upon him by the provisions of [the act]. . . . [Each commissioner] shall have jurisdiction of all claims and questions arising . . . under [the act] . . . ." (Internal quotation marks omitted.) *Stickney* v. *Sunlight Construction, Inc.*, supra, 248 Conn. 762. General Statutes § 31-278 now provides in relevant part: "[Each commissioner] . . . shall have all powers necessary to enable him to perform the duties imposed

upon him by the provisions of [the act]. Each commissioner shall hear all claims and questions arising under [the act] . . . ."

[12] More specifically, the Workers' Compensation Commissioner determined that "the [termination agreement] and payment of $70,228.51 was based on the number of years [the claimant] worked for the [employer] and there was no money paid in [the] agreement for [the claimant's] workers' compensation claim." (Internal quotation marks omitted.) *Leonetti* v. *MacDermid, Inc.*, supra, 310 Conn. 202.

[13] We observe that the settlement agreement expressly provided that it encompassed, inter alia, causes of action under the "[Workers'] Compensation Laws of the State of Connecticut . . . ." To the extent that the terms of the settlement agreement implicated the act, the commission had subject matter jurisdiction to consider and interpret those portions of the settlement agreement. As we have explained in this opinion, however, the plaintiff's claims before the commission centered on the terms of the settlement agreement that were wholly unrelated to the act and, consequently, outside of the ambit of the commission's jurisdiction.

———————————————————